AO 106 (Rev. 04/010) Application for Search Warrant          AUTHORIZED AND APPROVED/DATE:   /S Bow Bottomly 6/27/2023

# UNITED STATES DISTRICT COURT
### for the
WESTERN          DISTRICT OF          OKLAHOMA

|  |  |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be search* | ) |
| *Or identify the person by name and address)* | ) |
| PROPERTY KNOWN AS: | ) |
| 1.  Apple IPhone (black in color with broken | ) |
| camera and back) | ) |
| 2.  Apple IPhone (white in color with black case) | ) |
| 3.  Apple IPhone (purple in color with flower case) | ) |
|  | ) |
| IN THE POSSESSION OF: | ) |
| FBI Oklahoma City Field Office | ) |
| 3301 West Memorial Road | ) |
| Oklahoma City, OK 73134-7098 | ) |

Case No: M-23- 487-SM

## APPLICATION FOR SEARCH WARRANT

I, Timothy Curtis Doyle, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property *(identify the person or describe property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference.

Located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference

The basis for the search under Fed. R. Crim.P.41(c) is *(check one or more)*:
- ☒ evidence of the crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C., § 2312 | Transportation of stolen vehicles |
| Title 18, U.S.C., § 2313 | Sale or receipt of stolen vehicles |
| Title 18 U.S.C. § 2314 | Transportation of stolen goods |
| Title 18, U.S.C., § 2315 | Sale or receipt of stolen goods |
| Title 18 U.S.C. § 317 | Conspiracy |

The application is based on these facts:

See attached Affidavit of Special Agent Timothy Curtis Doyle, FBI, which is incorporated by reference herein.
    ☒    Continued on the attached sheet(s).
    ☐    Delayed notice of [No. of Days]  days *(give exact ending date if more than 30 days)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

*Applicant's signature*

Timothy Curtis Doyle
Special Agent
FBI

Sworn to before me and signed in my presence.

Date:    June 28, 2023

*Judge's signature*

City and State:    Oklahoma City, Oklahoma      SUZANNE MITCHELL, U.S. Magistrate Judge
                                                  *Printed name and title*

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN
# DISTRICT OF OKLAHOMA

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Timothy Curtis Doyle, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant to search for and seize evidence of violations of Title 18 of the United States Code § 2314 (Transportation of stolen goods), § 2315 (Sale or receipt of stolen goods), § 2312 (Transportation of stolen vehicles), § 2313 (Sale or receipt of stolen vehicles), and § 317 (Conspiracy) located within one (1) Apple iPhone (black in color with broken camera and back), one (1) Apple iPhone (white in color with black case), and one (1) Apple iPhone (purple in color with flower case), currently in law enforcement possession at the Federal Bureau of Investigation (FBI) Oklahoma City Field Office, 3301 W. Memorial Road, Oklahoma City, OK. The devices to be searched are described in the following paragraphs and in Attachment A.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since approximately September 2015. I am currently assigned to the FBI's Oklahoma City Field Office, Stillwater Resident Agency. As part of my duties as an FBI Special Agent, I investigate federal criminal violations, to include interstate transportation of stolen property. As a result of my training and experience, including information provided by other federal agents with applicable knowledge, I am familiar with the tactics, methods, and techniques used by criminals in cases such as this. As part of my job, I have conducted numerous investigations involving the use of the internet, smart phones, email, and social media to further

criminal activity. I have participated in the execution of multiple federal search warrants involving various types of evidence and property.

3.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from my review of local law enforcement reports and interviews of witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

4.    Based on my training and experience, evidence of criminal activity, to include motives, operational planning, operational preparation, and other relevant evidence will be found in the criminal's electronic devices including their cellular telephone. This evidence often includes location data stored in the internal memory of the cellular telephone, encrypted communications between co-conspirators, non-encrypted communications between co-conspirators in the form of emails and text messages, and other accounts linked to the criminal and their criminal activity to include social media accounts which can be used in the planning and execution of a crime.

5.    Based on the information set forth below, there is probable cause to believe that three smart phones, seized from the subjects of my investigation, identified as one (1) Apple iPhone (black in color with broken camera and back), one (1) Apple iPhone (white in color with black case), and one (1) Apple iPhone (purple in color with flower case), and hereinafter referred to collectively as "the DEVICES", and any and all evidence referenced in Attachment B, is related to violations of Title 18 of the United States Code § 2314 (Transportation of stolen goods), § 2315 (Sale or receipt of stolen goods), § 2312 (Transportation of stolen vehicles), § 2313 (Sale or receipt of stolen vehicles), and § 317 (Conspiracy). There is probable cause to

2

believe that a search of "the DEVICES" will lead to evidence, fruits, and instrumentalities of the aforementioned crimes.

6.    This court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. §§ 2711, 2703(a), (b)(1)(A), and (c)(1)(A). Specifically, the Court is "a district court of the United States. . . that has jurisdiction over the offense being investigated." 18 U.S.C. §2711(3)(A)(i), and "is in . . . a district in which the provider . . . is located or in which the wire or electronic communication, records, or other information are stored." 18 U.S.C. §2711(3)(A)(ii).

## TECHNICAL TERMS

7.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a.    Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing

3

and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some

4

GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

## PROBABLE CAUSE

8.      The Federal Bureau of Investigation (FBI) is currently investigating a theft ring responsible for the theft and subsequent interstate transport of stolen vehicles, trailers, and construction equipment. Identified as co-conspirators in the ring are CODY ROACH ("ROACH"), CHANCE REESE ("REESE"), and BRITTANY PONDER ("PONDER").

9.      On or about February 6, 2023, D.W. reported the theft of his 2019 Caterpillar 299D2 Skid Loader with attached 2022 Yellow Diamond 84" Brush Mower from a pasture located in the vicinity of Byron, Oklahoma. Responding investigators from the Oklahoma Department of Agriculture, Food, and Forestry (hereinafter referred to as "ODA") collected

security camera footage from various locations in northern Oklahoma and southern Kansas which determined the equipment to have been stolen by an individual driving a white Dodge pickup truck with a bale bed. ODA used additional security camera footage from various establishments to track the subject vehicle with the stolen property to the vicinity of Harper, Kansas. Ultimately, ODA collected security camera footage from a gas station in Harper, Kansas which showed the subject vehicle traveling north out of Harper, Kansas. From this last location, ODA was unable to determine where the subject vehicle went. From information obtained from Caterpillar, the equipment's last known location was at the intersection of 140th St. and Highway 2, north of Harper, Kansas. This location was based on a service ping sent from a tracking system located on the stolen equipment.

10.    Unable to track the stolen equipment from Harper, Kansas, this investigation went cold until April 8, 2023, when ODA learned of the theft of a 2015 Dodge Charger from a car lot in Pratt, Kansas. The theft of the Dodge Charger was conducted with a white Dodge pickup that matched the description of the Dodge pickup used in the theft of equipment from Byron, Oklahoma on or about February 6, 2023. However, unlike the theft in Byron, Oklahoma where the subject used a bale bed to transport the stolen equipment, in the theft of the Dodge Charger, the subject used a hydraulic lift attached to the rear of the white Dodge pickup to transport the stolen car.

11.    ODA's investigation learned that a white Dodge pickup which matched the description of the white Dodge pickup used in the thefts had been seen in Cherokee, Oklahoma with a hydraulic lift attached. On April 11, 2023, ODA located a white Dodge pickup with hydraulic lift parked at 907 E. Washington Ave, Cherokee, Oklahoma, the known address of ROACH and his girlfriend PONDER.

7

12.     Physical surveillance conducted by ODA on April 13, 2023, at 907 E.
Washington Ave, Cherokee, Oklahoma, determined the hydraulic lift, previously attached to the
subject's white Dodge pickup had been taken off and placed to the rear of a building located on
the premises.  However, the white Dodge pickup was no longer visible at 907 E. Washington
Ave.

13.     Later the same day, an ODA agent drove around Cherokee, Oklahoma looking for
the white Dodge pickup truck.  The ODA agent spotted the white Dodge pickup outside of a
building located at 109 S. Oklahoma Ave., Cherokee, Oklahoma.  While surveilling the building,
the ODA agent heard noises coming from inside of the building that sounded like someone was
building something or tearing something apart.  Therefore, the ODA agent decided to approach
the building in an undercover capacity and knocked on a partially opened door to the building.
The door was answered by REESE who appeared to the ODA agent to be working on vehicles in
the building.  The ODA agent told REESE that he worked in the oil fields and was looking to
purchase some trucks and inquired if the white Dodge pickup parked outside of the building was
for sale.  REESE told the ODA agent that the vehicle was not for sale and that it was "going to
the owner's brother."  REESE stated there was a silver Ford inside of the building that the owner
may be willing to sell.

14.     The ODA agent asked REESE if he would show him the silver Ford that may be
for sale, to which REESE agreed and escorted the ODA agent into the building.  The ODA agent
observed that the building was being used as a mechanic's shop.  REESE led the ODA agent to a
4-door silver Ford pickup with a brand-new Butler bale bed attached.  REESE gave the ODA
agent access to the interior of the pickup and told him he could start it if he wanted.  REESE
further said that if he needed more details he would need to speak with the owner Cody Roach.

8

The ODA agent then took photographs of the pickup and bale bed before departing. After exiting the building, the ODA agent reviewed the photographs taken of the silver Ford pickup and bale bed and observed serial number 22A11 marked on the bale bed. Back in his truck, the ODA agent did some research and learned that on or about January 12, 2023, a subject using a Kubota skid steer stole four Butler bale beds from a dealership located in Kingfisher, Oklahoma. Further, one of the stolen bale beds was identified as having the serial number 22A11.

15.    Later in the day on April 13, 2023, the ODA agent met with REESE at the building located at 109 S. Oklahoma, Cherokee, Oklahoma. REESE was informed that stolen property had been located within the building; however, REESE denied these allegations. The ODA agent told REESE he could show him the stolen property, so REESE unlocked the building with a key on his personal key ring and escorted the ODA agent back into the building so he could point out the stolen property to REESE. The ODA agent observed that the serial number markings on the stolen bale bed had been taken off. REESE kept stating he wanted to cooperate and began to explain that only certain areas of the shop were his. REESE was then presented with a consent to search form for the building. It appeared REESE was going to sign the form, but REESE's girlfriend (or wife) talked him out of it. While in the building, ROACH arrived and informed the ODA agent he was trespassing on the property because ROACH owned everything on the property. The ODA agent then exited the building and requested both ROACH and REESE speak with him at the Cherokee Police Department. REESE and ROACH were transported to the Cherokee Police Department at which time ROACH refused to participate in an interview. ROACH was subsequently placed under arrest for possession of stolen property. REESE consented to an interview and waived his *Miranda* rights. During this interview REESE admitted to removing the serial markings of the bale bed after the ODA agent

9

had departed the building initially. REESE appeared and acted nervous and stated, "You are not going to get me on any charges, everything there is Cody Roach's." He then added, "I did not steal anything!"

16.    Later, on the evening of April 13, 2023, ODA with support from the Cherokee Police Department executed a state search warrant at 109 S. Oklahoma, Cherokee, Oklahoma. The search found etched into the driver's side of the bale bed the serial number 22A11. Also found at the building was the aforementioned white Dodge pickup, believed to be used in the theft of the 2019 Caterpillar 299D2 Skid Loader with attached 2022 Yellow Diamond 84" Brush Mower and 2015 Dodge Charger. A close examination of Dodge pickup, further identified as a white Dodge 3500 HD Crew Cab, revealed the pickup had a homemade VIN covering over the original factory VIN of the truck. A query of the original VIN for the Dodge pickup determined it to have been stolen from Kingfisher, Oklahoma on or about December 26, 2021.

17.    Later, on the evening of April 13, 2023, after executing the search warrant at 109 S. Oklahoma, Cherokee, Oklahoma, ODA agents with the assistance of the Cherokee Police Department executed a state search warrant at 907 E. Washington, Cherokee, Oklahoma – the known residence of ROACH. Upon initial entry to the property, investigators were met by PONDER, ROACH's girlfriend who also lived at the property. Found on the property was the stolen 2019 Caterpillar 299D2 Skid Loader with attached 2022 Yellow Diamond 84" Brush Mower. Also found at 907 E. Washington were multiple firearms, silencers, drug paraphernalia, a small amount of crystalized substance that tested positive through a field test as methamphetamine, multiple key fobs and key fob programmers, and photocopies of Oklahoma vehicle tags. Located on the property was a 2017 Dodge 3500. A query of the factory VIN for this truck determined it had been stolen in Missouri on or about September 18, 2022. Attached

10

to this truck was a Butler bale bed with serial number 22A52. This bale bed was one of the four stolen from Kingfisher, Oklahoma on or about January 12, 2023. The search of this property also located the other two remaining Butler bale beds stolen in January 2023 from Kingfisher, Oklahoma.

18.     Also found on the property located at 907 E. Washington, Cherokee, Oklahoma was a black Chevrolet pickup that appeared to have an after-market paint job. The vehicle tag and registration information indicated that the vehicle was a 2018 black Chevrolet Silverado with Oklahoma tag JLG341 and was registered to ROACH. Research on the VIN for this vehicle revealed that the truck was in fact a 2018 white Chevrolet 3500 that was stolen in Woods County, Oklahoma on or about August 8, 2019, along with a Honda EU6500is generator. When ODA agents located this vehicle at ROACH's property, it had attached a black car hauler trailer. A check of the VIN associated with the car hauler trailer revealed it to have been stolen from Lamar County, Texas on or about October 28, 2022. Inside of the car hauler trailer was the stolen 2015 Dodge Charger that was stolen from a dealership in Pratt, Kansas.

19.     During the search at 907 E. Washington, Cherokee, Oklahoma PONDER told the ODA agent that she was present with ROACH when he stole the 2019 Caterpillar 299D2 Skid Loader with attached 2022 Yellow Diamond 84" Brush Mower near Byron, Kansas. The ODA agent then told PONDER that he was unable to locate any mobile phones in use at the time and location of this theft and asked PONDER if she or ROACH had used any cell jamming technology during the theft. PONDER smiled then walked to her vehicle, retrieved a small GPS jamming device and handed it over to the ODA agent. PONDER further admitted to the ODA agent that she was present with ROACH one time when they traveled into Texas to steal a trailer.

11

20.     On April 13, 2023, based on the search warrant, ODA seized the DEVICES

belonging to ROACH, PONDER, and REESE. The DEVICES were turned over to the FBI from

ODA on May 31, 2023, and are currently in the custody of the FBI, within the Oklahoma City

Field Office's evidence room located at 3301 W. Memorial Rd, Oklahoma City, Oklahoma. The

DEVICES are further described as 1) IPhone, black in color with broken camera and back

belonging to REESE; 2) IPhone, white in color with black case, belonging to ROACH; and 3)

IPhone, purple in color with flower case, belonging to PONDER.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21.     Based on my knowledge, training, and experience, I know that electronic devices

can store information for long periods of time. Similarly, items that have been viewed via the

Internet are typically stored for some period of time on the device. This information can

sometimes be recovered with forensic tools.

22.     As further described in Attachment B, this application seeks permission to locate

not only electronically stored information that might serve as direct evidence of the crimes

described on the warrant, but also forensic evidence that establishes how the DEVICES were

used, the purpose of their uses, who used them, where they used them, and when. There is

probable cause to believe that this forensic electronic evidence might be on the DEVICES

because:

    a.    Data on the storage medium can provide evidence of a file that was once on the

        storage medium but has since been deleted or edited, or of a deleted portion of a

        file (such as a paragraph that has been deleted from a word processing file).

        Virtual memory paging systems can leave traces of information on the storage

        medium that show what tasks and processes were recently active. Web browsers,

e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, it is sometimes necessary to establish that a particular thing is not present on a storage medium.

    f.   I know that an electronic device can be an instrumentality of the crime and also can be a storage medium for evidence of the crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain data that is evidence of how the electronic device was use; data that was sent or received; and other records that indicate the nature of the offense.

23.    In addition to any electronic evidence described above, I am seeking authority to search for any items detailed in Attachment B.

24.    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit the examination of the DEVICES consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

25.    Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, your Affiant submits there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

26.    Based on all the above-listed facts and circumstances, your Affiant believes that probable cause exists for a search warrant authorizing the examination of the DEVICES described in Attachment A to seek the items described in Attachment B, which will constitute

14

evidence and instrumentalities concerning violations of Title 18 of the United States Code §

2314 (Transportation of stolen goods), § 2315 (Sale or receipt of stolen goods), § 2312

(Transportation of stolen vehicles), § 2313 (Sale or receipt of stolen vehicles), and § 317

(Conspiracy).

  27. This Court has jurisdiction to issue the requested warrant because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) &

(c)(1)(A).  Specifically, the Court is "a district court of the United States... that - has jurisdiction

over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

  28. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not

required for the service or execution of this warrant.

Respectfully submitted,

_____

Timothy Curtis Doyle
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on this ⟨28⟩ day of June, 2023

_____

HONORABLE SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

15

## ATTACHMENT A

### Property to Be Searched

This warrant applies to the below listed mobile phones:

1.  one (1) Apple iPhone, black in color with broken camera and broken back:

  

2.  one (1) Apple iPhone, white in color with black case:

  

3.     one (1) Apple iPhone, purple in color with flower case:



## ATTACHMENT B

### Particular Things to be Seized

I.   All records on the extraction of the DEVICES described in Attachment A that relate to violations of Title 18 of the United States Code § 2314 (Transportation of stolen goods), § 2315 (Sale or receipt of stolen goods), § 2312 (Transportation of stolen vehicles), § 2313 (Sale or receipt of stolen vehicles), and § 317 (Conspiracy):

   a.   Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show address book information, including all stored or saved telephone numbers.

   b.   Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show call log information, including all telephone numbers dialed from the DEVICES and all telephone numbers accessed through any push-to-talk functions, as well as all received or missed incoming calls.

   c.   Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show instant and social media messages (such as Facebook, Facebook Messenger, Snapchat, FaceTime, Skype, and WhatsApp), SMS text, email communications, or other text or written communications sent to or received from any digital device.

   d.   Audio recordings, pictures, video recordings or still captured images on phone memory cards, or other storage related to the planning, coordinating, motive, and or executing activities in furtherance of violations of Title 18 of the United States Code § 2314 (Transportation of stolen goods), § 2315 (Sale or receipt of stolen

3

goods), § 2312 (Transportation of stolen vehicles), § 2313 (Sale or receipt of stolen vehicles), and § 317 (Conspiracy).

e.  Contents of any calendar or date book stored on the DEVICES.

f.  Global Positioning System ("GPS") coordinates and other information or records identifying travel routes, destinations, origination points, and other locations.

g.  Evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence.

h.  Evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software.

i.  Evidence of the attachment of other devices.

j.  Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device.

k.  Evidence of the times the DEVICES were used.

l.  Passwords, encryption keys, and other access devices that may be necessary to access the device.

m.  Applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the DEVICES or to conduct a forensic examination of it.

n. Records of or information about Internet Protocol addresses used by the DEVICES.

o. Records of or information about the DEVICES' Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

p. Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber.

q. Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information).

r. Evidence indicating the subscriber's state of mind as it relates to the crime under investigation.

s. Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.

t. Records, documents, and information relating to financial transactions conducted in furtherance of violations of Title 18 of the United States Code § 2314 (Transportation of stolen goods), § 2315 (Sale or receipt of stolen goods), § 2312 (Transportation of stolen vehicles), § 2313 (Sale or receipt of stolen vehicles), and § 317 (Conspiracy).

II. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or

5

stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

III.    This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.